In the Matter of the **ESTATE OF Ormond J. BROSIUS, deceased.**

**Jimmy Lee BROSIUS, Appellant (Petitioner),**

v.

**Ardith D. GARDNER, Appellee (Respondent).**

**No. 83–206.**

Supreme Court of Wyoming.

July 10, 1984.

Lawrence A. Yonkee of Redle, Yonkee & Arney, Sheridan, for appellant.

Timothy S. Tarver, Sheridan, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

This appeal concerns the propriety of a summary judgment entered against appellant upon his petition contesting the will of his adoptive father on the ground that the will was executed under undue influence.

We will affirm.

On September 7, 1976, the testator, Ormond J. Brosius, went unaccompanied to his attorney's office in Buffalo, Wyoming, and requested that a will be prepared which would revoke all prior wills, would transfer his estate to his close friend, Ardith Gardner, and would make no mention of his son, appellant Jimmy Lee Brosius. Ormond "Smokey" Brosius was 79 years old at the time. The attorney drafted the will pursuant to instructions, designating Ardith Gardner sole beneficiary of Smokey's property, which included 436.34 acres of land with improvements in the Big Horn Mountains.

Smokey and his wife, Myrle, had been friends with Gardner and her husband in the early 1950's. In the late 1960's Smokey and Gardner renewed their friendship, following Smokey's divorce and the death of Gardner's husband.

In 1976, after the death of a long-time companion, Smokey moved to Gardner's home in Casper. He paid rent to her on an irregular basis for his room. They shared certain expenses and purchased property together in Midwest. It was shortly after he moved in with Gardner that Smokey executed the will naming her sole beneficiary and personal representative, which will appellant challenges as the product of Gardner's undue influence.

Smokey regularly consumed large quantities of alcohol and had done so for as long as his son Jimmy could remember. Beginning in September, 1977, Smokey often was hospitalized for treatment of pulmonary problems. By 1980, he required bottled oxygen. In March, 1981, while hospitalized in Cheyenne, he executed a power of attorney, authorizing Gardner to manage and attend to all of his business, financial and personal affairs. She transferred his bank account to a conveniently located bank and collected his mail.

In August, 1981, one month prior to his death, Smokey was admitted to Natrona County Memorial Hospital in Casper. His son Jimmy and his daughter-in-law visited him in the hospital and offered to move him to their home in Lovell. When Jimmy attempted to obtain his father's personal effects from Gardner, she refused to cooperate. She informed the Brosiuses that she held Smokey's power of attorney and that she would not permit Smokey to move to Lovell as the trip would kill him within 24 hours. Gardner made no attempt, however, to prevent Jimmy from either seeing his father in the hospital or talking with him alone.

Following Smokey's death on September 4, 1981, Ardith Gardner offered for probate the will executed in 1976. Jimmy Brosius challenged the will, asserting that as a result of protracted illness and alcoholism,

his father lacked testamentary capacity. Jimmy further contended that Gardner dominated Smokey and coerced him into executing a will for her benefit.[1] The district court entered summary judgment in favor of Gardner.

Appellant limits the issue raised on appeal to whether summary judgment was properly entered with respect to his claim of undue influence:

"Was a summary judgment dismissing a will contest proper where discovery depositions taken in the case show some evidence on every element necessary to establish undue influence, i.e. (1) that relations between the Appellee charged with exercising undue influence and the decedent afforded an opportunity to control the testamentary act; (2) the decedent's condition was such as to permit subversion of his freedom of will, (3) there was activity on the part of the person charged with exercising undue influence; and (4) that the Appellee unduly profited as sole beneficiary under the Will contested by the Appellant."

## SUMMARY JUDGMENT

We recently reviewed the standards for granting or upholding a summary judgment in *Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334 (1983). We referred to *Reno Livestock Corporation v. Sun Oil Company (Delaware)*, Wyo., 638 P.2d 147, 150 (1981), for a statement of our appellate duty in such cases:

"'* * * When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and

that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record.'" 671 P.2d at 336.

In *Blackmore v. Davis Oil Company*, supra, we cited numerous prior cases in which we have held that an appellant must come forward with competent evidence of specific facts countering those presented by appellee in order to show a genuine issue of fact for trial. 671 P.2d at 336–337. We said that possible inferences, favorable to appellant but unsupported by fact, are insufficient to overturn a summary judgment. 671 P.2d at 337.

In the instant case, appellant calls to our attention direct evidence of Gardner's control over Smokey's personal and financial affairs during the months prior to his death in 1981. Appellant contends that such evidence, together with proof of Smokey's susceptible condition and the opportunity for domination by Gardner, gives rise to a genuine issue of material fact as to whether Smokey's 1976 will was the product of Gardner's undue influence. Appellant's contention, however, finds no support in the law of undue influence with respect to testamentary dispositions.

## UNDUE INFLUENCE

We have often said that a testator who is legally qualified and who acts in accordance with the law has an absolute right to dispose of his property after death as he sees fit. *In re Nelson's Estate*, 72 Wyo. 444, 266 P.2d 238, 246 (1954); *In re Lane's Estate*, 50 Wyo. 119, 58 P.2d 415, 419 (1936). Our statutes solemnly assure this right.[2] Accordingly, undue influence sufficient to render a will voidable must be

---

1. Jimmy Brosius offered no will for probate. The record shows that Ormond Brosius had executed at least two wills prior to 1976, neither of which named Jimmy as a beneficiary.

2. Sections 2–6–101 through 2–6–306, W.S.1977.

such as extinguishes the testator's freedom and ability to implement his own choices:

> " * * * Wills deliberately made by persons of sound mind are not to be lightly set aside, and the undue influence which will warrant doing so must be proven to be such as destroys the free agency and thereby substitutes the will of another for that of the testator." *Cook v. Bolduc,* 24 Wyo. 281, 157 P. 580, 581–582 (1916), reh. denied 158 P. 266.

This court summarized the elements of undue influence in *In re Estate of Draper,* Wyo., 374 P.2d 425, 430–431 (1962):

> " * * * [B]efore the proponent of the will has any *obligation* to present evidence showing that undue influence did not exist there must be evidence, the probative force of which establishes that (1) the relations between the one charged with exercising undue influence and the decedent afforded an opportunity to control the testamentary act, (2) the decedent's condition was such as to permit subversion of his freedom of will, (3) there was activity on the part of the person charged with exercising undue influence; and (4) that such person unduly profited as beneficiary under the will."

■ In the case at bar the evidence which is undisputed or favorable to appellant indicates that, beginning in 1976, the living arrangements established by Gardner and Smokey provided ample opportunity for the exercise of impermissible influence. Smokey's alcoholism, poor health, and despondency following the death of a close companion suggest that he may have been susceptible to any influence. Furthermore, Gardner, as sole beneficiary, profited under the terms of the will to the complete exclusion of Smokey's son and grandchildren.

The foregoing factual information is wholly immaterial, however, unless it can be tied to evidence that Gardner actually exerted control over the testator so as to make the 1976 instrument her will rather than his. *In re Estate of Carey,* Wyo., 504 P.2d 793, 800 (1972); *In re Estate of Draper,* supra, 374 P.2d at 432; *In re Estate of*

*Merrill,* 80 Wyo. 276, 341 P.2d 506, 509 (1959); *In re Nelson's Estate,* supra, 266 P.2d at 244. Appellant asserts no facts to counter Gardner's testimony that she did nothing to encourage Smokey to make a will or to leave his property to her. She was not present when Smokey discussed the will with his attorney. She made no effort to prevent Smokey from subsequently changing his will, as Jimmy talked privately with his father during hospital visits.

Jimmy's own testimony belies his claim that Gardner exercised undue influence in procuring Smokey's will:

> "Q. Did anyone ever tell you or do you have any evidence to indicate that she coerced him or used undue influence on him to get him to sign the 1976 will?
>
> "A. If you mean did she take a gun and hold it to his head, no.
>
> "Q. Did she use any other sort of coercion or undue influence that you are aware of?
>
> "A. That I can prove, no.
>
> "Q. Well, that you're aware of?
>
> "A. I think, this is just an opinion now, I think that she used the place to stay as a lever down there against him, yes.
>
> "Q. Do you have any factual basis to substantiate that?
>
> "A. No."

Appellant's mere assertion that Gardner was a domineering person who "ran the show" is insufficient to present a triable dispute as to whether she improperly controlled the testamentary disposition of Smokey's property. Likewise, we find remote and speculative any inference of undue influence which might be said to arise from Gardner's management of Smokey's affairs during his illness in 1981 or from her reluctance to have him return to his son during that time.

■ We have no quarrel with the rule of law set out in *In Re Conroy's Estate,* 29 Wyo. 62, 211 P. 96, 99 (1922), and cited to us by appellant to the effect that undue influence may be established by circumstantial evidence:

" * * * [U]ndue influence, seldom susceptible of direct proof, may be established by proof of facts from which it may be fairly and reasonably inferred."

See also *In re Estate of Waters*, Wyo., 629 P.2d 470 (1981). However, appellant must present *some specific facts* which give rise to a reasonable inference of undue influence in order to present a genuine issue for trial. *Blackmore v. Davis Oil Company*, supra. Although the instances described by appellant might form a basis for suspicion, they are insufficient to establish that Smokey executed his will because of the undue influence of Gardner. *In re Estate of Draper*, supra, 374 P.2d at 432; *In re Estate of Wilson*, Wyo., 397 P.2d 805 (1964).

We conclude that no genuine issue exists as to any material fact concerning appellant's claim of undue influence and that the proponent of the will is entitled to judgment as a matter of law.

The summary judgment is affirmed.