Joyce M. MARCHANT, Appellant
(Plaintiff),

v.

John Ronald COOK and Andrea Leone
Cook, his wife, Appellees
(Defendants).

No. 98–84.

Supreme Court of Wyoming.

Nov. 25, 1998.

Robert A. Hampe, Cheyenne, for Appellant.

Jack B. Speight, Robert T. McCue, and Martin L. Hardsocg of Hathaway, Speight & Kunz, LLC, Cheyenne, for Appellees.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant Joyce Marchant appeals from the summary judgment that was granted in favor of Appellees John Ronald Cook (Ron) and Andrea Cook.

We affirm.

### ISSUES

The appellant presents four issues for our review:

1. Did the trial court [err] in granting Defendants['] motion for summary judg[ ]ment on Plaintiff's claim for fraud?

2. Did the trial court [err] in granting Defendants['] motion for summary judgment on Plaintiff's claim for conversion?

3. Did the trial court [err] in granting Defendants['] motion for summary judgment on Plaintiff's claim for undue influence?

4. Did the trial court [err] in not allowing Plaintiff to amend the complaint?

### FACTS

This case involves a controversy over the disposition of the assets that belonged to John Cook. John was married to June, and they had four children: Ron, Joyce, Shirley Brooks, and Jane Eickbush. John and June legally separated in February 1969. Ron married Andrea, and they had a daughter, Jayna Lybeck.

On October 17, 1980, John executed a revocable trust agreement and a pour-over will. In the trust agreement, he identified himself as the settlor and appointed himself as the trustee of the trust created by that agree-

* Retired November 2, 1998.

ment. He also appointed Ron to serve as the successor trustee in the event that he was not able to fulfill the trustee's duties. In his will, John named Ron as the personal representative of his estate. He conveyed the following assets to the trust: (1) stock in Cook–McCann Concrete, Inc.; (2) a fifty-percent partnership interest in rental property located at 1816 Fremont in Cheyenne; (3) a fifty-percent interest in a joint venture called J & J Partnership; and (4) unspecified certificates of deposit and savings accounts.

In 1983, John and his partner sold the J & J Partnership property. John did not place the sale proceeds into the trust. In 1985, he transferred his Cook–McCann stock to Ron. John amended his trust agreement on May 23, 1985, to reflect the stock transfer but made the disposition of the stock contingent upon Ron's surviving him. The Cook–McCann shareholders approved the stock transfer on June 24, 1985. John deeded his fifty-percent interest in the property located at 1816 Fremont to the partnership entity on May 24, 1989, and, as a result, the appellees, who owned the remaining fifty-percent interest, became the sole owners of the property.

John executed a second amendment to the trust agreement on November 14, 1989, in which he directed the trustee to divide his trust estate, upon his death, equally among his four children and to distribute it over a five-year period. He also deleted all mention of the Cook–McCann stock and the two partnership interests. On March 16, 1993, John executed a third amendment to his trust agreement in which he instructed the trustee to divide his trust estate, upon his death, equally among his four children and to distribute it one year after his death.

John died on February 13, 1995. Ron, acting as the personal representative of John's estate, petitioned to file John's will without probate or administration because the estate did not contain property that would be subject to probate. The petition and a copy of John's will were sent to each heir. John's attorney also sent letters to each heir, explaining that, during his lifetime, John disposed of all his assets that would have been subject to probate.

John had two bank accounts at the time of his death. One account had a balance of approximately $106,000 and was held jointly, with the right of survivorship, by John, Ron, and Jayna. The other account was owned jointly, with the right of survivorship, by John, Ron, and Shirley, and that account had a balance of $5,789.67. Ron, Shirley, and Jayna agreed to gratuitously distribute the proceeds of the accounts as follows: One-half to June; and one-half in equal shares to John and June's four children. The appellant, consequently, received $13,510.42.

On May 3, 1996, the appellant filed a petition for the probate of John's will and requested that the district court issue letters testamentary. Ron objected to the appellant's petition because the estate did not contain assets that were subject to probate. The appellant subsequently withdrew her petition.

On August 16, 1996, the appellant filed a complaint against the appellees that included a claim for conversion and/or an accounting of the assets in John's estate and trust. The district court dismissed the complaint because the appellant failed to state a claim for conversion and granted the appellant leave to file an amended complaint. The appellant filed the first amended complaint in which she stated two causes of action: (1) fraud and/or misrepresentation; and (2) conversion and/or accounting.

The appellees filed a motion for a summary judgment on September 19, 1997, asserting that they were entitled to be awarded a judgment as a matter of law on both of the appellant's causes of action. The district court held a hearing, and, subsequently, issued a decision letter and an order granting a summary judgment in favor of the appellees. The appellant perfected her appeal to the Wyoming Supreme Court.

## DISCUSSION

### A. Standard of Review

A summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to be awarded a judgment as a matter of law. *Covington v. W.R. Grace–Conn., Inc.*, 952

P.2d 1105, 1106 (Wyo.1998). A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or defense that the parties have asserted. *Thunder Hawk By and Through Jensen v. Union Pacific Railroad Company,* 844 P.2d 1045, 1047 (Wyo.1992); *Allmaras v. Mudge,* 820 P.2d 533, 535 (Wyo.1991). The movant bears the initial burden of establishing a prima facia case for summary judgment. *Weber v. McCoy,* 950 P.2d 548, 551 (Wyo. 1997); *Thunder Hawk By and Through Jensen,* 844 P.2d at 1047. If the movant carries his burden, the party who is opposing the motion for a summary judgment must present specific facts to demonstrate that a genuine issue of material fact does exist. *Weber,* 950 P.2d at 551; *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987).

The Wyoming Supreme Court evaluates the propriety of a summary judgment by employing the same standards and by using the same materials as the district court employed and used. *Covington,* 952 P.2d at 1106. We examine the record in the light most favorable to the party who opposed the motion for a summary judgment, and we give that party all the favorable inferences that may be fairly drawn from the record. *Id.* We do not accord deference to the district court's decisions on issues of law. *Ahearn v. Tri–County Federal Savings Bank,* 948 P.2d 896, 897 (Wyo.1997).

## B. Fraud and/or Misrepresentation

The appellant asserts that the district court erred by granting a summary judgment in favor of the appellees on her fraud and/or misrepresentation claim. The district court concluded that the appellant had "wholly failed to come forward with *any* facts to support her claim or to show any material issue of fact."

 "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." W.R.C.P. 9(b).

Fraud is established when a plaintiff demonstrates, by clear and convincing evidence, that (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages.

*Jurkovich v. Tomlinson,* 905 P.2d 409, 411 (Wyo.1995). *See also M & A Construction Corp. v. Akzo Nobel Coatings, Inc.,* 936 P.2d 451, 457 (Wyo.1997). When a party who is asserting a fraud claim is confronted with a motion for a summary judgment, that party must present clear, unequivocal, and convincing evidence to demonstrate that a genuine issue of material fact exists. *McKenney v. Pacific First Federal Savings Bank of Tacoma, Washington,* 887 P.2d 927, 929 (Wyo. 1994); *Laird v. Laird,* 597 P.2d 463, 466 (Wyo.1979).

 The district court determined that the appellant had failed to allege, or to proffer evidence to establish, the elements of her fraud claim. The district court stated in part:

Plaintiff's First Amended Complaint fails to allege any misrepresentation made to Plaintiff or, for that matter, to her father. Neither does Plaintiff allege any misrepresentation to herself or to her father which she or he believed to be true and which was, in fact, not true. Neither has Plaintiff presented any evidence what[so]ever of any such misrepresentation or reliance thereon in her response to Defendants' motion.

The appellant argues that she did submit evidence to demonstrate that the appellees made a false representation. She states in her appellate brief: "This false representation revolves around Decedent's mental state and Defendants['] intentional actions." The appellant maintains that the medical records and the testimony of John's longtime girlfriend confirmed that John's mental capacity was compromised and that he was, therefore, susceptible to being influenced by others.

The bulk of the statements in the appellant's fraud claim, as set forth in her first amended complaint, pertained to John's deteriorating mental and physical health. Only two paragraphs of her cause of action ad-

dressed the appellees' alleged fraudulent actions.

19. THAT before March, 1988, John Cook exhibited head pain, disorientation, loss of memory and other symptoms, and the Plaintiff is informed and verily believes that the Defendants and each of them did[,] individually or in collusion with others, ... systematically set upon a course of conduct intended to separate and permanently deprive John Cook of his assets and/or their control, use and benefit.

. . . .

24. That the Defendant, John Ronald Cook, aided by his attorney, continued to create trust addendums and will codiciles, systematically dissipating the assets of John Cook by placing them in the name and under the control of the Defendants, John Ronald Cook and Andrea Leone Cook.

The appellant was specifically questioned about the factual basis for her allegations when she gave her deposition:

Q. Do you see where it makes reference in that paragraph to "The defendants," being your sister-in-law and brother, "individually or in collusion with others did systematically set upon a course of conduct." What others are you referring to there, if you know?

A. I don't know.

Q. What course of conduct did they set upon to deprive John Cook of his assets? What did they specifically do to deprive him of his assets?

A. My brother?

Q. Yeah.

A. They gave him just so much money every month for pocket money.

Q. They being your—

A. Well, Ronny, my brother.

Q. Gave who?

A. My dad.

Q. But the question is what did they do to take the money from him in the first place, specifically that you're aware of?

A. I don't know.

Q. Look at paragraph 24, if you would, please. "That the Defendant, John Ronald Cook, aided by his attorney, continued to create trust addendums and will codicils systematically dissipating the assets." Is the attorney Perry Dray?

A. Yes.

Q. And what is your understanding, if any, about the trust addendums or will codicils dissipating the assets? Do you have any facts to support that statement?

A. No.

The appellant's deposition was obviously strong evidence in support of the appellees' motion for a summary judgment, and the district court pointed to the appellant's testimony as demonstrating that no genuine issue of material fact existed with regard to her fraud claim. Additionally, the appellees presented affidavits from two persons who witnessed John's execution of various will and trust documents. The affiants averred that John executed the documents of his own free will and that he was not under undue influence. They also stated that they believed John had the requisite mental capacity to execute the documents.

Although the appellant was confronted with the appellees' evidence in support of their motion for a summary judgment on her fraud claim, she did not proffer specific evidence to show that the appellees made a false representation. We are, therefore, left with the inescapable conclusion that the appellant failed to establish a factual basis for her fraud claim. The district court correctly determined that no genuine issue of material fact existed and that the appellees were entitled to be awarded a judgment as a matter of law.

■ The appellant also claims that the district court should have allowed her case to proceed past the summary judgment stage because she presented a claim for negligent misrepresentation. The elements of a negligent misrepresentation claim are: "False information supplied in the course of one's business for the guidance of others in their business, failure to exercise reasonable care in obtaining or relating the information, and pecuniary loss resulting from justifiable reliance thereon." *Duffy v. Brown*, 708 P.2d 433, 437 (Wyo.1985). *See also Rissler &*

*McMurry Co. v. Sheridan Area Water Supply Joint Powers Board,* 929 P.2d 1228, 1234 (Wyo.1996).

■ The facts of this case do not even remotely suggest that negligent misrepresentation took place. The appellant does not direct us to any evidence showing that the appellees supplied false information to John or the appellant. Given the obscure nature of the appellant's negligent misrepresentation claim and the complete lack of evidence to support such a claim, we are not surprised that the district court did not even address the issue in its decision letter or order. We conclude that the district court did not err by granting a summary judgment in favor of the appellees on the appellant's fraud and/or misrepresentation claim.

## C. Conversion

■ The appellant contends that the district court erred when it granted the appellees' motion for a summary judgment on her conversion claim.[1] "[C]onversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership." *Ferguson v. Coronado Oil Company,* 884 P.2d 971, 975 (Wyo. 1994). In order to establish a conversion claim, a plaintiff must show that:

> (1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendants lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.

*Frost v. Eggeman,* 638 P.2d 141, 144 (Wyo. 1981). *See also McCarthy v. James E. Simon Co.,* 923 P.2d 747, 750 (Wyo.1996).

■ The district court concluded that the appellant had

not alleged that she has or ever had legal title to any of the subject property; that she either had possession of the property or the right to possess it *at the time of the alleged conversion;* or that she had any right to use and enjoyment of the property. Neither does Plaintiff address any of these issues in her response to Defendants' motion. Plaintiff's deposition testimony indicates quite clearly that she has no evidence or facts what[so]ever to support her claim, but that she believes she is entitled to a share of the property simply because she was the decedent's daughter.

The appellant stated in her first amended complaint that the appellees had systematically converted property belonging to John and that she had a legal claim to his property. She did not state, however, that she had legal title to the property. The appellant argues on appeal that she enjoyed legal title to the property in two ways: (1) she was an heir to John's estate and a beneficiary under his trust; and (2) by virtue of the intestacy statutes.

John transferred his property to himself as trustee of his revocable trust. Over the next several years, he conveyed and disposed of the trust res, which he had a right to do as the owner of the property and under the terms of the revocable trust. While the appellant was giving her deposition, she was questioned about what specific facts she had to support her conversion claim, and her responses were evasive:

> Q. Now, besides the defendants, your sister-in-law and brother, individually or in concert with another or others, who is the another or others, if you know?
>
> A. My two sisters.
>
> Q. Do you have any facts that they worked with your brother and sister-in-law to take anything from you or that you think you're entitled to—
>
> A. I have no facts.
>
> Q. —that your father had?
>
> A. I have no facts.
>
> Q. A lot of suspicion?
>
> A. Yes.

---

1. The appellant did not raise an issue on appeal about her demand for an accounting. Accordingly, we will not consider that matter in this decision.

. . . .

Q. Do you feel that you are entitled to any shares of stock of Cook–McCann?

A. Yes, I do.

Q. Why?

A. Because I am the daughter of John Cook also.

. . . .

Q. You have no information whatsoever as to why your dad transferred that stock to your brother?

A. No.

The appellant's deposition was obviously very damaging to her conversion claim because she repeatedly admitted that she did not have specific facts to support that claim. The appellant did not produce evidence to verify that she enjoyed legal title to any of the disputed property or that she possessed or had an immediate right of possession to the property at the time the appellees allegedly converted it. The fact that she was John's daughter, without more, was not sufficient to substantiate the appellant's claim that she had legal title to John's property. Faced with the inadequacy of the appellant's pleading and the woeful lack of evidence to support her conversion claim, the district court appropriately granted a summary judgment in favor of the appellees on the appellant's conversion claim.

**D. Undue Influence**

■ The appellant claims that the district court erred when it did not allow her to amend her complaint to plead a cause of action for undue influence. The appellant's claim is both curious and disingenuous. The appellant did not request leave to amend her complaint to plead undue influence. Further, even though the district court recognized that the appellant had not formally pleaded an undue influence cause of action, it did consider the issue in its summary judgment decision because she had raised the issue in her response to the appellees' motion for a summary judgment. The appellant does not, therefore, have a right to complain on appeal that the district court erred by failing to allow her to amend her complaint to assert a claim for undue influence.

The appellant also contends that the district court erred by granting a summary judgment in favor of the appellees on the undue influence issue. The district court stated in its decision letter that "the record reveals nothing even remotely hinting at the actual exercise of any undue influence" by the appellees.

The appellant asserts that the appellees exercised undue influence over John to procure the *inter vivos* transfer of his property to them and to control his testamentary dispositions. She claims that John's mental capacity was compromised and that the appellees were aware of his failing mental and physical health. The appellant suggests that, in some vague way, the appellees used their knowledge of John's failing mental abilities to their advantage to control his dispositions of his property.

■ In order to prove undue influence in an *inter vivos* transaction, the plaintiff must show: "(1) opportunity to control; (2) a condition permitting subversion; and (3) activity on the part of the person charged." *Macaraeg v. Wilson (Estate of Obra),* 749 P.2d 272, 277 (Wyo.1988). *See also Walsh v. Walsh,* 841 P.2d 831, 834 (Wyo.1992). Courts carefully scrutinize deed transactions when the parties involved have a confidential relationship with one another. *Short v. Hall,* 785 P.2d 1167, 1170 (Wyo.1990). Once the person who is seeking to void the transaction on the basis of undue influence has established that a confidential relationship existed between the grantor and the grantee, the burden of proof shifts to the recipient of the property to prove that the transaction was fair and conducted in good faith. *Walsh,* 841 P.2d at 834; *Short,* 785 P.2d at 1170.

■ With regard to claims of undue influence in testamentary dispositions, this Court has stated:

[B]efore the proponent of the will has any obligation to present evidence showing that undue influence did not exist there must be evidence, the probative force of which establishes that (1) the relations between the one charged with exercising undue influence and the decedent afforded an opportunity to control the testamentary act,

(2) the decedent's condition was such as to permit subversion of his freedom of will, (3) there was activity on the part of the person charged with exercising undue influence; and (4) that such person unduly profited as beneficiary under the will.

*Pence v. Lush (Estate of Draper)*, 374 P.2d 425, 430–31 (Wyo.1962). *See also Brosius v. Gardner*, 683 P.2d 663, 666 (Wyo.1984).

The elements of undue influence are very similar regardless of whether a plaintiff is seeking to cancel an *inter vivos* transaction or he is seeking to set aside a will. Under either theory, the party who is asserting the claim must present evidence that shows the actual application of control and undue influence by the party charged with exercising undue influence. *Short*, 785 P.2d at 1170–71; *Brosius*, 683 P.2d at 666.

Once again, we turn to the appellant's deposition to determine whether or not a genuine issue of material fact existed on her undue influence claim:

Q. Do you have any facts that your sister-in-law or brother had any kind of undue influence or control over your father?

A. No.

Q. Or manipulated or directed or controlled him in any way for him to give away his property during his lifetime?

A. I can't make any accusations that I can't prove.

Q. Because you have no facts, correct?

A. No.

. . . .

Q. You have no information whatsoever as to why your dad transferred that stock to your brother?

A. No.

The appellant's testimony illustrates that she based her undue influence claim on suspicion rather than on actual facts. The facts that John's mental abilities were failing and that the appellees were aware of his condition were not sufficient to validate the appellant's undue influence claim. She does not direct us to specific evidence in the record to prove that the appellees actually exerted undue influence or control over John. We, there-fore, agree with the district court that the appellees were entitled to be awarded a summary judgment on the undue influence claim.

Affirmed.