2002 WY 21

METZ BEVERAGE COMPANY, a Wyoming corporation, Appellant (Defendant),

v.

WYOMING BEVERAGES, INC., a Wyoming corporation, Appellee (Plaintiff).

No. 00–287.

Supreme Court of Wyoming.

Feb. 7, 2002.

Representing Appellant: John C. Smiley, Stephen C. Peters, and Todd E. Mair of Lindquist & Vennum P.L.L.P., Denver, CO. Argument by Mr. Peters.

Representing Appellee: John W. Davis of Worland, WY; and David G. Palmer and Brian L. Duffy of Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, L.L.P., Denver, CO. Argument by Messrs. Davis and Palmer.

Before LEHMAN, C.J., and GOLDEN, HILL, and VOIGT, JJ., and BROOKS, District Judge.

BROOKS, District Judge.

[¶ 1] This case is brought by the appellant, Metz Beverage Company (Metz), against the appellee, Wyoming Beverages, Inc. (Wyoming Beverage), alleging the wrongful termination of a distributorship contract.

[¶ 2] Metz had distributed Pepsi products for approximately 30 years in northeast Wyoming for Wyoming Beverage. In June 1997, Wyoming Beverage notified Metz that their long-term business arrangement would be terminated effective in October of 1997. Thereafter, Wyoming Beverage filed a declaratory action seeking a resolution of the relationship. Metz filed a counterclaim asserting, among other things, breach of contract, fraud, unjust enrichment, promissory estoppel, and a claim seeking an accounting.

[¶ 3] After extensive discovery and the filing of voluminous motions, the district court granted summary judgment against Metz on Metz's breach of contract, fraud, and unjust enrichment claims. The matter is now before this court upon Metz's appeal of the district court's order and certification pursuant to W.R.C.P. 54(b).

## ISSUE

[¶ 4] The issue on appeal is straightforward:

Did the District Court have a proper legal and factual basis to grant summary judgment against Metz as to Metz's claims of breach of contract, fraud and unjust enrichment.

## FACTUAL BACKGROUND

[¶ 5] In 1967, Metz began to distribute Pepsi products in northeast Wyoming for Wyoming Beverage. That relationship, which continued for 30 years, started as an oral agreement between Forrest Clay of Wyoming Beverage and Buster Metz for Metz. The relationship and agreement appears to have been profitable and amicable for much of the 30 years.

[¶ 6] In May of 1996, Buster Metz died. On June 12, 1997, Mr. Clay wrote a letter to Dorothy Metz, Buster's widow, stating:

We believe that our oral agreement is terminable at will and that competitive circumstances and business necessities dictate termination of the distribution arrangement....

· It is our intention to accomplish the transfer to direct distribution on October 1, 1997[.]

It is undisputed that the original agreement made by Mr. Clay and Mr. Metz, in addition to being oral, was indefinite in terms of its duration. In 1990, the parties began discussing a written agreement. The initial attempts to reach a written agreement failed apparently as a result of the parties' inability to agree as to the proper length of the agreement. Metz sought an agreement that was significantly longer in duration than that proposed by Wyoming Beverage.

[¶ 7] Between 1992 and 1994, Metz and Wyoming Beverage again tried to negotiate a written contract. Wyoming Beverage insisted on a limited three-year contract with no right of renewal. Metz continued to seek a longer agreement with a provision that any

agreement could only be terminated for cause. During the negotiations, there was extensive communication and correspondence among Mr. Clay and Dorothy and Diana Metz. Diana Metz, Buster's daughter, had become deeply involved in the family business by that time.

[¶ 8] Mr. Clay, in his correspondence with Metz, often expressed dissatisfaction with the performance of Metz's obligations under the contract and indicated that the failure to correct Metz's performance problems would result in termination of the oral agreement. Ultimately, the parties did not reach a written agreement. Buster Metz died in 1996. Wyoming Beverage terminated the relationship with Metz in October of 1997, and Wyoming Beverage itself took over direct distribution of the Pepsi products in northeast Wyoming.

### STANDARD OF REVIEW

[¶ 9] Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Covington v. W.R. Grace–Conn., Inc.,* 952 P.2d 1105, 1106 (Wyo.1998). A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted. *All-maras v. Mudge,* 820 P.2d 533, 535 (Wyo. 1991). The movant bears the initial burden of establishing a prima facie case for summary judgment. If the movant carries his burden, the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists. *Weber v. McCoy,* 950 P.2d 548, 551 (Wyo.1997). This court evaluates the propriety of a summary judgment by employing the same standards and by using the same materials as the district court employed and used. We examine the record in the light most favorable to the party who opposed the motion for summary judgment, and we give that party all the favorable inferences that may fairly be drawn from the record. We accord no deference to the district court's decisions on issues of law. *Marchant v. Cook,* 967 P.2d 551, 554 (Wyo.1998).

### BREACH OF CONTRACT CLAIM

[¶ 10] It is the position of Wyoming Beverage that any contract which existed with Metz was terminable at will by either party. Wyoming Beverage asserts that any such contract was unenforceable or limited because of the statute of frauds and the fact that the agreement had no specific duration. Metz, however, contends there was a valid enforceable contract that was only terminable for cause and that Wyoming Beverage breached its agreement with Metz by simply terminating the contract without cause.

#### A. *The Contract*

[¶ 11] Wyoming Beverage has, at times in the record, contested the existence of a contract with Metz. Wyoming Beverage has instead referred to an arrangement or relationship with Metz. However, there is no doubt that an agreement of some nature existed between the parties from 1967 to 1997. The agreement was acknowledged in various pieces of correspondence sent by Mr. Clay to Metz. For example, in a letter to Diana Metz dated December 6, 1993, Mr. Clay stated:

> If you fail to meet these obligations by the dates indicated, *the oral agreement* between Wyoming Beverages and Metz Beverages will be terminated, effective April 15, 1994.

(Emphasis added.) Similarly, on April 25, 1994, Mr. Clay wrote to Dorothy Metz: "As I mentioned to you then, we have no desire to cancel *our oral agreement* " (emphasis added). We, therefore, conclude what the parties have essentially conceded that there was a contract between Metz and Wyoming Beverage.

#### B. *The Statute of Frauds*

[¶ 12] Wyoming Beverage next contends that the agreement between the parties was void because it violated the statute of frauds. The parties acknowledge that the agreement in question was one for the sale of goods and, therefore, the Wyoming statutes incorporating the Uniform Commercial Code at §§ 34.1–2–101 *et seq.* apply.

[¶ 13] The statute of frauds relating to the Uniform Commercial Code is found at

Wyo. Stat. Ann. § 34.1–2–201 (LexisNexis 2001), which provides as follows:

(a) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

. . .

(c) A contract which does not satisfy the requirements of subsection (a) but which is valid in other respects is enforceable:

. . .

(ii) If the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted[.]

[¶ 14] During discovery Mr. Clay testified in a deposition as follows:

Q: You sold him [Metz] all the product he could order. It was that simple?

A: I sold him what he ordered that I could sell him, yes.

Pat Reed, one of Wyoming Beverage's managers, also testified as follows:

Q: Metz Beverages was encouraged to order however much product it could sell, wasn't it?

A: Yes.

Q: And Wyoming Beverages would supply to Metz Beverage, again, however much product Metz would require?

A: Yes.

From the foregoing letters, there is documentary evidence wherein Wyoming Beverage admitted that there was an agreement. Furthermore, there is evidence in the form of letters, testimony, and a 30–year ongoing business relationship that Wyoming Beverage would sell to Metz all of the Pepsi products that Metz needed to satisfy its customers. Thus, there is evidence of the agreement and that the agreement was a requirements contract.

[¶ 15] This court has previously held that the Uniform Commercial Code parol evidence rule is intended to liberalize the rigidity of the common law. In addition, we noted the Uniform Commercial Code is intended to expand commercial practices through custom and usage as well as by agreement between the parties. *Century Ready–Mix Co. v. Lower & Co.*, 770 P.2d 692, 697 (Wyo.1989). Thus, rigid adherence to the statute of frauds is contrary to the philosophy of the Uniform Commercial Code, and it is this court's policy to sustain a contact whenever possible. This court will not seek technical grounds for defeating a contract. *Century Ready–Mix*, at 697. The record reveals, through deposition testimony and other writings, that there was ample evidence to create an issue of fact as to any Uniform Commercial Code statute of frauds defenses raised by Wyoming Beverage.

[¶ 16] Wyoming Beverage also relies on the general statute of frauds, Wyo. Stat. Ann. § 1–23–105 (LexisNexis 2001), which states:

(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

(i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof[.]

This argument also fails for a number of reasons. As previously noted, there are in fact various writings acknowledging the existence of the agreement. The writings need not be made contemporaneously with the initial agreement, especially where, as here, the agreement was of long duration and the writings occurred during the performance of the contract. *Mead v. Leo Sheep Co.*, 32 Wyo. 313, 232 P. 511, 513 (1925); *Laramie Printing Trustees v. Krueger*, 437 P.2d 856, 859 (Wyo.1968).

[¶ 17] Furthermore, this court has held that the general statute of frauds is inapplicable where there has been substantial part performance by one party. *Fowler v. Fowler*, 933 P.2d 502, 504 (Wyo.1997). Clearly, 30 years of performance by both parties would appear to satisfy the substantial part performance exception to the statute of frauds.

[¶ 18] Finally, assuming this was a contract with no duration that was either terminable for cause or terminable at will, conceptually it could have been performed within one year. Therefore, it would not fall within the statute of frauds. The purpose of the statute of frauds is to prevent the enforcement of alleged promises that never were made. The statute is not to be utilized to repudiate promises that in fact were made. *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 816 (Wyo. 1992). The general Wyoming statute of frauds is inapplicable to this case.

## C. *Terms of the Contract*

[¶ 19] Wyoming Beverage contends ultimately that if there was an agreement sufficient to withstand the statute of frauds, such an agreement was indefinite in duration and could be terminated by either party at any time. In support of its contention, Wyoming Beverage relies on Wyo. Stat. Ann. § 34.1–2–309 (LexisNexis 2001), which provides:

> (b) Where the contract provides for successive performance but is indefinite in duration it is valid for a reasonable time but *unless otherwise agreed* may be terminated at any time by either party.

(Emphasis added.) Metz, not surprisingly, asserts that it had been agreed by the parties that the contract would only be terminable for cause. The question, then, is whether there was evidence that would permit the fact finder to conclude that the parties had otherwise agreed that Metz could only be terminated for cause. In the absence of such agreement, the contract was terminable at will pursuant to § 34.1–2–309.

[¶ 20] This court believes that there is evidence that the agreement could only be terminated for cause. It is again found in the correspondence among Mr. Clay and Dorothy and Diana Metz. On December 6, 1993, Mr. Clay wrote Diana Metz:

> Our concerns about your sales level and failure to follow proper product rotation procedures, have been called to your attention on numerous occasions....
>
> . . .
>
> If you fail to meet these obligations by the dates indicated, the oral agreement between Wyoming Beverages and Metz Beverages will be terminated....

Similarly, on April 7, 1994, Mr. Clay wrote Diana Metz again and stated:

> If our concerns have not been adequately addressed, and if you have not realized your marketing goals, we must seriously consider our other options, including the termination of our existing oral agreement....

Again on April 25, 1994, Mr. Clay wrote to Dorothy Metz and stated: "[I]f the problems we have discussed are not corrected, then we would have no alternative to terminating the oral agreement." Certainly it appears that Mr. Clay was demanding that Metz improve performance or risk having the agreement terminated. A reasonable inference from such correspondence is that the existing agreement could only be terminated for cause.

[¶ 21] There is further evidence that a for-cause provision was part of the original agreement. The draft agreements submitted by Wyoming Beverage to Metz during negotiations for a written agreement in 1994 contained provisions for notice and an opportunity to cure prior to termination. A reasonable inference to be drawn from such drafts, especially in light of Mr. Clay's correspondence to the Metz family, is that the drafts represent a formalization of the prior oral agreement.

[¶ 22] Additionally, William Metz, the son of Buster Metz, filed an affidavit setting forth hearsay statements of Buster Metz to the effect that the original agreement between Wyoming Beverage and Metz could only be terminated for cause. The district court refused to consider such statements as being hearsay. The district court's

ruling necessarily involves the dead man's statute, Wyo. Stat. Ann. § 1–12–102 (Lexis-Nexis 2001), which provides:

> In an action or suit by or against a person who from any cause is incapable of testifying, or by or against a trustee, executor, administrator, heir or other representative of the person incapable of testifying, no judgment or decree founded on uncorroborated testimony shall be rendered in favor of a party whose interests are adverse to the person incapable of testifying or his trustee, executor, administrator, heir or other representative. ***In any such action or suit, if the adverse party testifies, all entries, memorandum and declarations by the party incapable of testifying made while he was capable, relevant to the matter in issue, may be received in evidence.***

(Emphasis added.)

[¶ 23] Wyoming Beverage originally submitted testimony from Forrest Clay, which is part of the record, reflecting statements made by Buster Metz to Mr. Clay concerning the original agreement. Mr. Clay stated by affidavit that Buster Metz had told him that there was no need for a written agreement in that: "If it's not good for you, it's not good for me." Certainly a reasonable conclusion that could be drawn from Mr. Metz's statement to Mr. Clay is that the agreement could be terminated with or without cause at any time.

[¶ 24] Once the Clay affidavit was submitted by Wyoming Beverage, Metz argues that it had the right to submit and have the court consider the statements Buster Metz made to his son. Indeed, § 1–12–102 specifically provides that if the adverse party testifies as to statements made by a decedent, all declarations by the party incapable of testifying, made while he was capable, relevant to the matter at issue may be received in evidence. Wyoming Beverage asserts, however, that the dead man's statute is inapplicable since Buster Metz is not a party and that Metz is still a viable corporation. Wyoming Beverage points out the dead man's statute specifically pertains to parties to an action. For those reasons, Wyoming Beverage argues

the hearsay statements of Buster Metz were properly excluded.

[¶ 25] Wyoming Beverage ignores the reality of the situation. Buster Metz was the principal shareholder and operating officer of Metz in 1967 and for many years thereafter. It would be unfair to allow statements of Buster Metz to be placed in evidence to be used against him and his company and yet not consider statements made by Mr. Metz which were offered by Metz. In the particular factual setting of a small family corporation, the dead man's statute should be read to allow relevant rebuttal testimony of the principal owner and officer of the corporation after that person's death.

[¶ 26] In *Consolidated Constr., Inc. v. Smith*, 634 P.2d 902, 904 (Wyo.1981), we found that the word "person" as used in the dead man's statute includes an individual, partnership and corporation. Further, this court concluded that the protections afforded by the dead man statute were applicable to a partnership within the setting of that case. Since the term "person" includes corporations as well as partnerships, the protections afforded by the Wyoming dead man's statute would also apply to a corporation. Clearly, a corporation can only speak through the people operating the business. *See*, Wyo. Stat. Ann. §§ 17–16–801 and 17–16–841.

[¶ 27] We agree with the court in *Mark Patterson, Inc. v. Bowie*, 172 Misc.2d 1000, 661 N.Y.S.2d 709, 712 (1997), which held:

> [T]he purpose behind the "Dead Man's Statute" would be frustrated "if ... the statute could be avoided by the device of framing a pleading in such a way that ... the claim is asserted only against a corporation, the stock of which is owned by the decedent's executors."

(Quoting *Matter of Cohen*, 137 N.Y.S.2d 300, 308 (1954)). Therefore, where a plaintiff files an affidavit setting forth hearsay statements of a deceased principal shareholder and officer of a defendant corporation, the dead man's statute permits presentation of rebuttal hearsay statements of the deceased person. In summary, it would simply be unfair to permit the use of statements made by the

principal shareholder and operating officer of the corporation to be used against the entity and then invoke the dead man's statute to prohibit any contrary statements that were made by that corporate officer.

[¶ 28] Wyoming Beverage next argues that the district court specifically stated that he did not consider the affidavit of Mr. Clay as it pertains to Mr. Clay's conversations with Buster Metz. Thus, Wyoming Beverage asserts, there is no reason to consider Metz's rebuttal affidavit. Indeed the trial judge noted that he did not consider the affidavits of Mr. Clay in reaching his decision. However, that is not how W.R.C.P. 56 operates. The moving party in a summary judgment proceeding files its papers and affidavits in support of summary judgment, and the responding party files its papers and affidavits in opposition. The district court, like the supreme court, must review the entire record that is before it. *Wyoming Ins. Dep't v. Sierra Life Ins. Co.*, 599 P.2d 1360, 1363 (Wyo.1979). While the evidence which is relied upon to sustain or defeat a summary judgment must be such as would be admissible in evidence, *Hunter v. Farmers Ins. Group*, 554 P.2d 1239, 1242 (Wyo.1976), the trial court cannot decide what portions of the admissible evidence it will or will not consider. It is up to the parties to determine which evidence should be presented to the court. Here, the trial court did not rule that the Clay statements were inadmissible. Thus, it was an abuse of discretion to exclude the responsive affidavit of William Metz.

[¶ 29] Finally, as to the breach of contract claim, there is no dispute that Metz and Wyoming Beverage had done business for 30 years. During those years Wyoming Beverage imposed various requirements on Metz. Those included the requirement that Metz not sell competing products. Certainly, the imposition of such a restraint on Metz's operation, taken together with the Clay letters or the statements from Buster Metz, might give rise to the inference that Metz could only be terminated for cause. This court believes that there was sufficient evidence in the record to raise the inference that the parties had agreed that their oral contract was only terminable for cause. In light of that evidence, a jury could conclude that Wyoming Beverage breached its agreement with Metz by simply terminating the relationship. We must, therefore, hold that the district court was in error when it granted summary judgment as to the Metz breach of contract claim.[1]

### FRAUD CLAIM

[¶ 30] In *Marchant v. Cook*, 967 P.2d 551, 554 (Wyo.1998) (quoting *Jurkovich v. Tomlinson*, 905 P.2d 409, 411 (Wyo.1995)), we outlined the elements that needed to be proved in a fraud claim by stating:

Fraud is established when a plaintiff demonstrates, by clear and convincing evi-

---

1. The parties in their briefs both made much of a piece of correspondence referred to as the "Cannon letter." During the failed negotiations for a written agreement, Metz's attorney, Tom Topel of Billings, Montana, suggested to the Metz family that they employ a Wyoming attorney to advise the Metzs of their rights under the existing oral agreement. The Metzs hired Sheridan attorney Kim Cannon for that purpose. Mr. Cannon authored a letter on January 11, 1991, which stated in part: "Absent a specific time provision, the contract may be terminated by either party." That letter was sent to the Metzs' other attorney, Tom Topel. During William Metz's deposition in 1998, he waived the attorney-client privilege as to confidential communications involving Metz Beverage with Mr. Topel relating to Pepsi and the Pepsi business. The "Cannon letter" was produced to Wyoming Beverage after a motion to compel. The district court found there had been a waiver of the attorney-client privilege.

This court is of the opinion that the waiver by Mr. Metz was sufficient to allow disclosure of the "Cannon letter." Mr. Metz waived confidential communications with Mr. Topel relating to Pepsi. That waiver describes the very essence of the "Cannon letter" to Mr. Topel. A waiver is the intentional relinquishing of a known right. *Lingle State Bank of Lingle v. Podolak*, 740 P.2d 392, 396 (Wyo.1987). That is exactly what Mr. Metz did.

The relevancy of the letter is, however, another matter. The "Cannon letter" expresses broad ranging legal opinions without the benefit of depositions and correspondence that were not yet in existence. Mr. Cannon's partial paraphrasing of a statute, coupled with much qualification and other extraneous legal theorizing, is of dubious significance. In any event, we do not believe the "Cannon letter" has any bearing on our conclusion that the Metz breach of contract claim should be presented to the jury.

dence, that 1) the defendant made a false representation intended to induce action by the plaintiff; 2) the plaintiff reasonably believed the representation to be true; and 3) the plaintiff relied on the false representation and suffered damages.

When a party who is asserting a fraud claim is confronted with a motion for summary judgment, that party must present clear, unequivocal and convincing evidence to demonstrate that a genuine issue of material fact exists. *Laird v. Laird,* 597 P.2d 463, 466 (Wyo.1979) and *McKenney v. Pacific First Federal Savings Bank of Tacoma, Washington,* 887 P.2d 927, 929 (Wyo.1994).

[¶ 31] Here Metz has not met that burden. In support of its fraud claim, Metz points to the April 25, 1994 letter to Dorothy Metz from Forrest Clay, quoted above. Metz contends that the following statement in that letter constitutes a factual basis for fraud, since, even then, Wyoming Beverage was planning to cancel the parties' agreement and take over the Pepsi distributorship: "As I mentioned to you then, we have no desire to cancel our oral agreement with Buster and discontinue dealing with Metz Beverages." However, this letter must be placed in the proper context. It followed letters of December, February, June, and earlier in April. All of the letters, including the letter of April 25th, unequivocally demonstrate that the relationship between Metz and Wyoming Beverage was tenuous at best. It seems clear that Metz was being told in a straightforward manner that if performance did not improve, the contract would be terminated.

[¶ 32] In addition, it is evident from the record that Wyoming Beverage was of the opinion, as far as back as the early '90s, that the agreement of the parties was terminable at will. Furthermore, Metz could take no solace from the Wyoming statutes, which provided that an oral contract of indefinite duration was potentially terminable at will. The April 25, 1994 letter to Ms. Metz, when read in its proper context, said: "we have no *desire* to cancel our oral agreement ... provided your company improves its performance." (Emphasis added.) This letter to Metz was written three years before the

agreement was terminated. It expressed only a desire not to cancel an agreement. Furthermore, it expressed a warning that the entire relationship was in jeopardy. The letter falls far short of clear and convincing evidence of fraud. An expression of mere desire, coupled with a warning, cannot, in this circumstance, be deemed to be the kind of misrepresentation to give rise to fraud. This is especially true where the ultimate action of Wyoming Beverage did not occur until three years after the letter.

[¶ 33] We have held in a promissory estoppel setting, where the burden of proof is simply a preponderance of the evidence that mere statements of hope are insufficient to justify reasonable reliance. *Davis v. Davis,* 855 P.2d 342, 348 (Wyo.1993). Likewise, a claim of fraud mandating clear and convincing evidence can fare no better where the claimant is relying upon a qualified expression of desire to establish reasonable reliance. For those reasons, we hold the district court's entry of summary judgment as to Metz's fraud claim was proper.

### UNJUST ENRICHMENT

[¶ 34] Metz's claim for unjust enrichment as it was filed and presented to the district court was to the effect that Wyoming Beverage had wrongfully taken over Metz's business in northeast Wyoming. Metz seeks recovery for the value of the good will of the business that Metz developed with its customers.

In its amended counterclaim, Metz alleged that:

> Metz Beverage built the Pepsi Cola soft drink distribution business in the five counties with its own substantial investments of labor and capital providing valuable services to Wyoming Beverages.
>
> . . .
>
> Should Wyoming Beverages prevail in its nefarious scheme to usurp the market and the business that Metz Beverage has built in the five counties over 30 years, it will be unjustly enriched.

Counsel for Metz summed up his argument by stating to the district court:

[S]urely 30 years ought to be worth something, and surely we ought to be paid something for the Pepsi division.

[A]ll of the good will associated with developing that market over these 30 years goes uncalled for without this remedy.

[¶ 35]   During this appeal Metz attempted, to some extent, to incorporate the argument that various tangible assets are included within the unjust enrichment claim. However, it is conceded that the value of such assets is recoverable under Metz's accounting claim.   It appears to this court that tangible assets, if any, are being included in the unjust enrichment claim for the first time on appeal.   As this court has stated innumerable times, we will not address matters that are being raised for the first time on appeal. *Oatts v. Jorgenson,* 821 P.2d 108, 111 (Wyo. 1991).   Therefore, we will address the unjust enrichment claim as it was filed and presented to the district court, that being a claim for the loss of the good will of the business.

[¶ 36]   We set forth the elements of an unjust enrichment claim in *Adkins v. Lawson,* 892 P.2d 128, 131 (Wyo.1995), by holding that

a party who is seeking damages on the basis of unjust enrichment must prove four elements:

(1) Valuable services were rendered, or materials furnished,

(2) to the party to be charged,

(3) which services or materials were accepted, used and enjoyed by the party, and,

(4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

(Quoting *Johnson v. Anderson,* 768 P.2d 18, 25 (Wyo.1989)).   Clearly, unjust enrichment claims visualize a situation where a party receives something of value without payment, which was accepted and used so as to unjustly enrich the recipient of the goods or services.   In this case those elements cannot be proven.

[¶ 37]   At the outset, this court would note that if Metz prevails on its breach of contract claim, there is no reason Metz cannot recover for the loss of the value of its business.   Metz acknowledges that its unjust enrichment claim is separate from its claim for breach of contract.   The simple truth, however, is that without a contract Metz cannot recover for the loss of business. Without a contract and the right to do business, Metz's sub-distributorship would have no value, and Metz would have no right to continue to serve northeast Wyoming.   Since Metz would have nothing of value it could transfer to another person or entity, Metz cannot prove the first element of an unjust enrichment claim.

[¶ 38]   Similarly, in the absence of an enforceable contract, Wyoming Beverage has not been unjustly enriched since it already owns the Pepsi distributorship and can do with it as it wants.   Therefore, the last element of an unjust enrichment claim could not be proven.   Simply stated, in order to recover the value of its business, Metz must prove that an enforceable contract to continue in business with Wyoming Beverage existed. Without such a contract, Metz had no ongoing business with which to enrich anybody, least of all Wyoming Beverage, which in fact owned the distributorship.   Not surprisingly, Metz has not cited any law to support an unjust enrichment theory seeking the loss of the good will of a business.   The district court properly granted summary judgment as to the unjust enrichment claim of Metz.

### CONCLUSION

[¶ 39]   We hold that the district court did not err when it granted summary judgment in favor of Wyoming Beverage on the fraud and unjust enrichment claims.   However, the district court's entry of summary judgment as to Metz's breach of contract claim must be reversed in that material factual issues exist.

[¶ 40]   Reversed in part, and affirmed in part.