2009 WY 75

**Larry WAGNER, Appellant (Plaintiff),**

v.

**Allen REUTER and Connie Reuter, Appellees (Defendants).**

**No. S-08-0142.**

Supreme Court of Wyoming.

June 8, 2009.

Representing Appellant: David M. Clark of Worrall & Greear, P.C., Worland, Wyoming.

Representing Appellee: Mary Helen Reed of McCarty, Reed and Earhart, Attorneys at Law, L.C., Cody, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant, Larry Wagner, sued Appellees, Allen and Connie Reuter, to recover the value of field work allegedly performed on a farm purchased by the Reuters, asserting claims of breach of contract, promissory estoppel, and unjust enrichment, and to recover damages for the Reuters' alleged conversion of irrigation tubes owned by Wagner. The district court granted summary judgment in favor of the Reuters on all claims

and awarded costs. We affirm in part, reverse in part, and remand.

## ISSUES

[¶ 2] Wagner presents these issues:

A. Whether the District Court erred by granting summary judgment to Appellees in regards to each of Appellant's causes of action for breach of contract, promissory estoppel, unjust enrichment, and conversion.

B. Whether the District Court erred by awarding deposition costs and costs of copies to Appellees.

## FACTS

[¶ 3] In January 2007, the Reuters purchased agricultural land in Washakie County, Wyoming, known as the Swing Farm. LTK, Inc. of which Rita Wagner, Wagner's wife, held 100% ownership interests, owned the real estate and Wagner, doing business as Larry Wagner Farms, operated the farm. The terms of the sale of the Swing Farm were detailed in the Contract to Buy and Sell Real Estate dated January 11, 2007.[1]

[¶ 4] Prior to signing the contract, the real estate agent and the Wagners discussed with the Reuters the issue of compensation for the field preparation work that Mr. Wagner had done on the farm in the fall of 2006. Wagner claimed he had plowed, disked, roller harrowed, and floated certain parcels of the Swing Farm. Mr. Reuter agreed to pay for the field work performed by Wagner but refused to sign a contract which included a set monetary provision because he was unable to inspect the land to ascertain what work had actually been completed. As a result, a provision was inserted into the contract, which stated: "Seller has done field preparation for the 2007 crop year. Compensation to seller for said work shall be settled between buyer and seller outside of this Contract." However, no further discussions occurred between the parties, and no payment was made by the Reuters for the field work.

[¶ 5] The contract also contained a provision requiring the Wagners to remove their personal property from the Swing Farm by March 10, 2007. Despite the contractual deadline, Wagner left irrigation tubes in a shed on the farm. On May 28, 2007, believing that Wagner no longer wanted the tubes, Mr. Reuter instructed Dave Tolsdorf, who was operating the farm, to use them for irrigation purposes. Tolsdorf subsequently used some of the tubes for a few hours, but most remained bundled in the shed. A day or two later, Wagner entered the Swing Farm property to retrieve his tubes and discovered that some of them had been placed in a field. Wagner immediately complained to Mr. Reuter, who told Wagner to remove the tubes from his property.

[¶ 6] That same day, Wagner contacted Pete Smet of Smet's Metal to retrieve the tubes from the farm. Wagner never inspected the tubes but assumed they were damaged and sold them to Smet. According to Tolsdorf, Smet and William Bell, who helped Smet retrieve the tubes, none of the tubes were damaged, and a large portion of them were still in their original bundles.

[¶ 7] On June 13, 2007, Wagner instituted the instant action against the Reuters. In his complaint, Wagner claimed the Reuters owed him $30,487.50 for the field work on the Swing Farm and asserted claims of breach of contract and unjust enrichment. He also alleged the Reuters converted the irrigation tubes to their own use and possession and sought damages in the amount of $6,000.00 for the loss of the tubes. Wagner subsequently filed an amended complaint on November 15, 2007, adding a cause of action for promissory estoppel pertaining to the field work.

[¶ 8] The Reuters answered both complaints, denying the allegations and asserting affirmative defenses. On January 25, 2008, the Reuters filed a motion for summary judgment as to all claims asserted by Wagner. The Reuters supported their motion with the transcripts of the depositions of the parties

---

1. LTK, Inc. subsequently assigned to Wagner all chooses in action it may have against the Reuters. For simplicity sake, we will refer to Wagner in this case when we would otherwise refer to LTK, Inc.

and affidavits of Smet, Bell, and Tolsdorf. Wagner countered with an affidavit of his wife and affidavits of Robert Swander, the real estate agent, and Roy Swander, both of whom were present when the contract was executed.

[¶ 9] Following a hearing on February 6, 2008, the district court granted the Reuters' motion for summary judgment on all claims. The Reuters then sought costs and attorney fees to which Wagner objected. The district court awarded costs in the amount of $905.01 but denied the Reuters' request for attorney fees. This appeal followed.

## DISCUSSION

### Summary Judgment Law

■ [¶ 10] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if proven, would establish or refute an essential element of a cause of action or a defense that a party has asserted. *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). We recently summarized the parties' responsibilities regarding a motion for summary judgment:

> The summary judgment movant bears the initial burden of establishing a *prima facie* case for summary judgment by showing that no genuine issue of material fact exists and that judgment should be granted as a matter of law. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987). He must present admissible evidence to meet his burden. *Sunshine Custom Paints & Body, Inc. v. South Douglas Highway Water & Sewer Dist.*, 2007 WY 206, ¶ 9, 173 P.3d 398, 401 (Wyo.2007).
>
> If the party seeking summary judgment carries his burden, the opposing party must present specific facts to demonstrate a genuine issue of material fact exists. *Hatton v. Energy Electric Co.*, 2006 WY

151, ¶ 9, 148 P.3d 8, 12 (2006). We explained the duties of the party opposing a motion for summary judgment in *Cook* [*v. Shoshone First Bank*, 2006 WY 13], ¶ 12, 126 P.3d [886,] 890 [ (2006) ], quoting *Jones v. Schabron*, 2005 WY 65, ¶¶ 9–11, 113 P.3d 34, 37 (Wyo.2005):

> After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings ..., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden.
>
> The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact.

*Alloway v. RT Capital, Inc.*, 2008 WY 123, ¶¶ 7–8, 193 P.3d 713, 715–16 (Wyo.2008).

■ [¶ 11] On appeal, this Court evaluates the propriety of a district court's summary judgment ruling by examining the same materials and following the same standards as the district court. *Id.*, ¶ 6, 193 P.3d at 715; *Metz*, ¶ 9, 39 P.3d at 1055. We examine the record de novo in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which may be fairly drawn from the record. *Alloway*, ¶ 6, 193 P.3d at 715. If upon review of the record, doubt exists about the presence of genuine issues of material fact, we resolve that doubt against the party seeking summary judgment. *Roussalis v. Wyoming Medical Center, Inc.*, 4 P.3d 209, 229 (Wyo.2000). We review questions of law de novo without giving any deference to the district court's determinations. *Metz*,

¶ 9, 39 P.3d at 1055. If we can uphold summary judgment on any proper legal basis appearing in the record, we will. *Bitker v. First Nat'l Bank in Evanston,* 2004 WY 114, ¶ 8, 98 P.3d 853, 855 (Wyo.2004); *Hulse v. First Interstate Bank of Commerce–Gillette,* 994 P.2d 957, 959 (Wyo.2000).

[¶ 12] Mindful of these foregoing principles and our standard of review applicable to a district court's order granting summary judgment, we will now determine whether the Reuters were entitled to have summary judgment entered in their favor.

### Field Work

[¶ 13] Regarding the issues raised by Wagner, the district court was correct in summarily disposing of Wagner's unjust enrichment and promissory estoppel claims. Such claims are precluded by the existence of an enforceable contract. *Sowerwine v. Keith,* 997 P.2d 1018, 1021 (Wyo.2000). Our concern, therefore, is with the language of the contract.

[¶ 14] The construction of contractual language, being a matter of law, is reviewed de novo.

According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co. v. Insurance Corp. of America,* 864 P.2d 1018, 1023 (Wyo.1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co. [v. Texaco, Inc.],* 882 P.2d [212,] 220 [ (Wyo.1994) ]; *Prudential Preferred Properties [v. J and J Ventures, Inc.],* 859 P.2d [1267,] 1271 [ (Wyo.1993) ]. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.,* 929 P.2d 535, 539 (Wyo.1996); *Prudential Preferred Properties,* 859 P.2d at 1271.

*Amoco Production Co. v. EM Nominee Partnership Co.,* 2 P.3d 534, 540 (Wyo.2000); *see also Roney v. B.B.C. Corp.,* 2004 WY 113, ¶ 10, 98 P.3d 196, 200 (Wyo.2004).

[¶ 15] The contractual language at issue is: "Seller has done field preparation for the 2007 crop year. Compensation to seller for said work shall be settled between buyer and seller outside of this Contract." Wagner argues this language binds the Reuters to pay for the field preparation work he performed. The Reuters, on the other hand, argue the language does not bind them to pay anything. Both parties are correct. By this contractual language, the Reuters obligated themselves to pay for field work completed. If no field work was done, the Reuters would owe Wagner nothing.

[¶ 16] Confusion seems to be caused by the fact that the actual amount due was to be settled outside the contract. This does not, however, render the provision meaningless within the context of the contract. Far from being a fruitless provision, this provision mandates, as part of the consideration for the sale of the farm, that the parties settle on a price for completed field work. This is, in essence, an agreement to engage in negotiations on the issue of field work. We find this agreement to engage in negotiations an integral part of the contract and fully enforceable.

[¶ 17] That this provision in the contract was breached is irrefutable. The facts reveal that the Reuters never engaged in any negotiations with Wagner as required by the contract. The potential result of such negotiations—the amount due and owing—is irrelevant to whether this contract provision has been violated. The district court thus erred in its determination that the contract was not breached. Still pending is the issue of damages. Genuine issues of material fact clearly exist as to what a reasonable amount of monetary compensation, if any, may be appropriate in this case.

### Irrigation Tubes

[¶ 18] Wagner also challenges the propriety of summary judgment on his conversion claim concerning the irrigation tubes. We have defined conversion as "any distinct act of dominion wrongfully executed over one's property in denial of his right or

inconsistent therewith." *Johnson v. Reiger*, 2004 WY 83, ¶ 27, 93 P.3d 992, 999 (Wyo. 2004). In essence, "[c]onversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership." *Id.* (quoting *Marchant v. Cook*, 967 P.2d 551, 556 (Wyo.1998)). In order to establish a cause of action in conversion, a plaintiff must show:

(1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant[ ] lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.

*Johnson*, ¶ 27, 93 P.3d at 999–1000; *Marchant*, 967 P.2d at 556.

[¶ 19] Applying the elements necessary to establish a claim for conversion, we conclude summary judgment was appropriately granted to the Reuters. We find dispositive the lack of any proof as to element four. The undisputed facts reveal that Wagner left the irrigation tubes on the farm after the contractual deadline for removal of his personal property. Approximately two and one-half months later, the Reuters used some of the tubes because they believed Wagner no longer wanted them. The undisputed facts show that upon being contacted by Wagner, the Reuters never refused to return the tubes. Indeed, Wagner acknowledged in his deposition testimony that the Reuters immediately surrendered the irrigation tubes upon his demand, and that he contacted Smet that same day to remove the tubes from the Reuters' property. Wagner also acknowledged that Smet picked up the tubes the same day as requested. Smet's affidavit confirmed he took possession of the irrigation tubes the same day Wagner contacted him. In light of these facts, Wagner's conversion claims fails as a matter of law.

*Award of Costs*

[¶ 20] Lastly, Wagner contends the district court erred in awarding costs to the Reuters. Costs are permitted under W.R.C.P. 54(d)(1) to the "prevailing party" of the litigation. A party is a prevailing party only if his or her position is improved by the litigation. *Schaub v. Wilson*, 969 P.2d 552, 561 (Wyo.1998) (citing *Crawford v. Amadio*, 932 P.2d 1288, 1292 (Wyo.1997)). Having determined that summary judgment on the breach of contract claim was improper, we conclude no basis exists at this stage of proceedings for awarding costs to the Reuters.

## CONCLUSION

[¶ 21] We affirm the grant of summary judgment on the claims of promissory estoppel, unjust enrichment and conversion. We reverse the grant of summary judgment on Wagner's breach of contract claim and remand for further proceedings on this claim.

[¶ 22] Because the case is remanded for further proceedings, the award of costs is premature and is hereby vacated.