2009 WY 151

Robert S. CHEEK, II, d/b/a Cheek Real Estate Services, Appellant (Plaintiff),

v.

JACKSON WAX MUSEUM, INC., by and through its President, Tim Smith, Appellee (Defendant).

No. S–09–0063.

Supreme Court of Wyoming.

Dec. 11, 2009.

Representing Appellant: Christopher S. Leigh, Jackson, Wyoming; Leonard R. Carlman of Hess, Carlman & D'Amours, LLC, Jackson, Wyoming. Argument by Mr. Carlman.

Representing Appellee: Vonde M. Smith of Law Offices of Vonde M. Smith, P.C., Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Jackson Wax Museum, Inc. (the Museum) entered into a brokerage agreement with Robert S. Cheek, II, doing business as Cheek Real Estate Services (CRES), in which Mr. Cheek agreed to act as the Museum's exclusive broker for leasing property owned by the Museum. Mr. Cheek found a tenant which entered into a lease with the Museum. The Museum paid Mr. Cheek the commission due under the brokerage agreement.

[¶ 2] After the term of the initial lease, the Museum and the tenant renegotiated the lease. The Museum did not pay Mr. Cheek a commission for the renegotiated lease. Mr. Cheek filed a complaint against the Museum seeking payment of the commission. The district court granted summary judgment for the Museum, finding that no commission was owed because the new lease was not an extension or renewal of the original lease, but was instead a new lease made directly between the Museum and the tenant.

[¶ 3] Mr. Cheek appeals the order granting summary judgment to the Museum, claiming the district court misinterpreted the new lease agreement. We agree and reverse the district court's order.

## ISSUE

[¶ 4] The determinative issue presented is whether the district court misinterpreted the lease language when it concluded Mr. Cheek was not entitled to a commission for the renegotiated lease.

## FACTS

[¶ 5] On December 1, 1993, Tim L. Smith, president of the Museum, and Mr. Cheek entered into a one year listing agreement providing that Mr. Cheek would act as the exclusive agent for leasing the Museum's property at 55 S. Cache Street in Jackson, Wyoming. Paragraph 5 of the listing agreement provided:

> In the event that: (i) at any time during the term of this agreement a lease of all or any portion of the Premises, upon any terms acceptable to us, shall be made with any tenant who was procured by CRES, or by us, or by any other person: or (ii) at any time after the expiration or the termination of this agreement a lease of all or any portion of the Premises, upon any terms acceptable to us, shall be made with any tenant to whom the Premises were submitted by CRES, or by us, or by any other person during the term of this agreement; then, and in either such event, we agree to pay to CRES one (1) full commission as provided in paragraph 7 of this agreement.

Paragraph 7 of the listing agreement provided in relevant part:

> The leasing commission shall be four percent (4%) of the aggregate rental for the entire term including renewals, extensions, or additional space. . . .

Paragraph 8 further provided:

> Leasing commissions are earned upon the execution of a lease by the parties and are payable upon commencement. Landlord may also cho[o]se, at its option, to pay the commission over the first two years of the base term in four equal payments due at the end of each six months of the first two years. Commissions on renewals are payable upon commencement of the renewal term.

[¶ 6] In the fall of 1994, the parties agreed to extend the listing agreement for another year, until December 1, 1995. In August of 1995, Mr. Cheek found a tenant to lease the Museum property and the Museum

and the tenant entered into a lease agreement. The lease term was from January 11, 1996, through January 10, 2006. Consistent with the terms of the listing agreement, the Museum paid Mr. Cheek his commission for the term of the lease.

[¶ 7] In 2006, Mr. Cheek became aware that the Museum and the tenant had entered into a second agreement, entitled "First Amendment to Lease Agreement," in which the tenant leased the property for another ten years. Mr. Cheek notified the Museum that he was entitled to his commission for the second lease. The Museum responded that Mr. Cheek was not entitled to a commission.

[¶ 8] Mr. Cheek filed this action against the Museum, alleging claims for breach of contract, quantum meruit and unjust enrichment. The Museum answered the complaint by denying the claims and asserting numerous affirmative defenses. The Museum then moved for summary judgment on Mr. Cheek's claims.

[¶ 9] In support of its motion, the Museum asserted Mr. Cheek was not entitled to a commission on the second lease because the Museum's obligation to him was discharged upon payment of the one full commission; the second lease was a distinct lease not covered by the listing agreement; and the parties' course of conduct showed there was no intent to allow the original lease to be renewed or extended. The Museum also contended that Mr. Cheek had no claims for unjust enrichment or quantum meruit.

[¶ 10] Mr. Cheek responded to the Museum's motion and also moved for summary judgment on his claims against the Museum. In support of his motion, he contended the listing agreement clearly and unambiguously provided for additional commissions in the event of renewals or extensions of the lease entered into between the Museum and a tenant procured by Mr. Cheek; therefore, upon renewal of the lease with the tenant he procured, the Museum was obligated to pay his commission.

[¶ 11] Following a hearing on the motions, the district court entered an order granting the Museum's motion. The district court concluded the amendment to the lease agreement was not a renewal but an entirely new lease; therefore, the Museum was not bound by the terms of the listing agreement and did not owe Mr. Cheek a commission. Mr. Cheek timely appealed from the district court's order.

**STANDARD OF REVIEW**

[¶ 12] Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56. A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of the cause of action or defense. *Omohundro v. Sullivan*, 2009 WY 38, ¶ 7, 202 P.3d 1077, 1081 (2009). Because summary judgment involves a purely legal determination, our review is *de novo*. *Id.* We review a district court's order granting summary judgment using the same materials and following the same standards as the district court. *Id.* We examine the record in the light most favorable to the party opposing the motion, affording to that party the benefit of all favorable inferences that fairly may be drawn from the record. *State ex rel. Arnold v. Ommen*, 2009 WY 24, ¶ 13, 201 P.3d 1127, 1132 (2009). In reviewing summary judgment orders involving contracts, we are governed by similar principles. When contractual language is clear and unambiguous, the interpretation and construction of contracts is a matter of law for the courts. *Vargas Ltd. Partnership v. Four "H" Ranches Architectural Control Comm.*, 2009 WY 26, ¶ 11, 202 P.3d 1045, 1050 (2009). We review questions of law *de novo* without giving any deference to the district court's determinations. *Id.*

**DISCUSSION**

[¶ 13] Mr. Cheek contends the district court erred in concluding the First Amendment to Lease Agreement was an entirely new lease rather than a renewal or extension of the original lease. He asserts the "amendment to lease agreement" was just that, an amendment to the original lease agreement, incorporating the original lease by its express terms and declaring that it was a modification of the original lease. Because the amendment to lease agreement

was an extension of the original lease agreement, Mr. Cheek contends, he was entitled to his commission in accordance with the brokerage agreement.

[¶ 14] In determining whether the district court's interpretation is correct, we apply the rules governing contract interpretation. A lease is a contract and is interpreted according to the rules applicable to contract interpretation. *Brown v. Johnston,* 2004 WY 17, ¶ 25, 85 P.3d 422, 429 (2004). Our goal is to determine and effectuate the intention of the parties. *Omohundro,* ¶ 9, 202 P.3d at 1081. We first examine the language used in the lease, giving the words their plain and ordinary meaning. *Id.* We consider the whole document and not just one clause or paragraph. *Id.* A disagreement between the parties as to the meaning of a lease does not give rise to an ambiguity. *Id.*

[¶ 15] The First Amendment to Lease Agreement states in pertinent part as follows:

This First Amendment to Lease Agreement (the "**Amendment**") is made as of the _____ day of _____, 2005, by and between **WAX MUSEUM OF OLD WYOMING, INC.,** a Wyoming corporation ("**Landlord**") and **EDDIE BAUER, INC.,** a Delaware corporation ("**Tenant**").

RECITALS:

WHEREAS, pursuant to that certain Lease Agreement dated on or about January 11, 1996 (the "**Lease**"), Landlord leased to Tenant and Tenant leased from Landlord the premises. . . .

WHEREAS, Landlord and Tenant desire to modify certain terms of the Lease as set forth herein.

NOW, THEREFORE, in consideration of mutual covenants and other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **TERM.** The term of the Lease as set forth in Section 1.1 on page 2 of the Lease shall be and is hereby extended for a period of ten (10) years, beginning on February 1, 2006, such that the term of the Lease will now end on January 31, 2016.

2. **FIXED RENT.** Section 3.2 on page 4 of the Lease titled "**Fixed Rent**" is hereby amended to add the following language at the end of that section:

| Term | Annual Fixed Annual | Monthly Fixed Rent |
|---|---|---|
| Lease Years 11-12 | * * * * | * * * * |
| Lease Years 13-15 | * * * * | * * * * |
| Lease Years 16-20 | * * * * | * * * * |

3. **PERCENTAGE RENT.** Section 3.3 on page 5 of the Lease titled "**Percentage Rent**" is hereby amended to add the following language at the end of that section:

For the Lease Years 11–20, Tenant hereby covenants. . . .

| Lease Year | Breakpoint |
|---|---|
| Lease Years 11-12 | * * * * |
| Lease Years 13-15 | * * * * |
| Lease Years 16-20 | * * * * |

4. **LEASE TO REMAIN IN EFFECT; SUCCESSORS.** The lease as herein amended shall remain in full force and effect in accordance with the terms thereof. . . .

[¶ 16] Considering this language, we note first that the document is entitled an "amendment" to the "lease agreement." The "lease agreement" to which the title refers is identified in the first paragraph of the recitals as "that certain Lease Agreement dated on or about January 11, 1996 (the 'Lease')," that is, the original lease agreement. Thus, the above document was clearly intended to be an amendment to the original lease agreement.

[¶ 17] The plain and ordinary meaning of the word "amend" is "to alter formally by modification, deletion or addition." *Webster's Third New Int'l Dictionary* 68 (2002). Giving the language used its plain and ordinary meaning it is apparent the parties intended the document as a modification of the original lease agreement. Consistent with this interpretation, the second paragraph of the recitals states that the parties desired "to modify certain terms of the Lease."

[¶ 18]   The next paragraph reflects that the parties agreed to modify three sections of the original lease: Section 1.1 on page 2, the lease term; Section 3.2 on page 4, entitled "fixed rent"; and Section 3.3 on page 5, entitled "percentage rent." Addressing the first section, the amendment extended the term of the original lease for another ten year period. As used in this context, the plain and ordinary meaning of the term "extend" is "to cause to be longer." *Id.* at 804. Thus, it appears the parties intended to modify the original lease by making the lease term longer.

[¶ 19]   Consistent with this intent, the next two paragraphs, in which the fixed rent and percentage rent provisions of the original lease were amended, referenced the lease years under the amended lease as years 11–12, 13–15, and 16–20 and not, as an entirely new lease would have done, as years 1–2, 3–5 and 6–10. Finally, numbered paragraph 4 of the amendment states that "The Lease," identified in the recitals as the 1996 lease, as amended, "shall remain in full force and effect in accordance with" its terms. Giving the language used in the amendment its plain and ordinary meaning, it is clear the parties intended to modify and extend the original lease. On the face of the amendment, there is no language suggesting that the parties intended to enter into an entirely new lease agreement.

■   [¶ 20]   We turn next to the language of the brokerage agreement to determine the parties' intent with respect to modifications or extensions of the lease. As noted in paragraph 5 above, paragraph 8 of the brokerage agreement provided for payment of a commission upon "renewal" of the original lease. The word "renew" is defined as: "to grant or obtain an extension on." *Id.* at 1922. In the context of a promissory note, we have said the term "renewal" means the reestablishment of the particular contract for another period of time. *Belden v. Thorkildsen,* 2008 WY 145, ¶ 15, 197 P.3d 148, 156 (2008).

> A note is "renewed" when a new note evidencing the same obligation is executed and delivered by the maker to the holder of the old note. Renewal does not entail a surrender of the outstanding note. A note is a renewal of an earlier note only if they involve the same obligation.

*Id.,* n. 3. Giving the language used in the brokerage agreement its plain and ordinary meaning, it appears Mr. Cheek and the Museum intended a commission to be paid if the original lease was extended or renewed.

[¶ 21]   In concluding otherwise, the district court identified the issue before it as whether a broker who is not involved in negotiations to extend a lease is entitled to a commission when the lessor and lessee make a new lease agreement with different terms than the original lease. The district court cited the following passage from H.G. Hirschberg, Annotation, *Broker's Right to Commission on Renewal, Extension, or Renegotiation of Lease,* 79 A.L.R.2d 1063 § 2 (2008):

> [A]   broker who procured a lease for the lessor and who claims commission on a renewal thereof must recover, if at all, on the basis of an express contractual provision for commission on renewals. And, even where such provision was included in a brokerage agreement, most courts have held that the broker was not entitled to commission where lessor and lessee, without reference to the renewal or extension provisions of the original lease make a new lease agreement which differs in its terms from those of the renewal option provisions, and particularly so in respect of the term for which it is to run.

[¶ 22]   In concluding the amendment was a new lease, and not an extension of the original, the district court was influenced by the following factors: 1) the original lease agreement did not contain an option for renewal or extension of the lease; 2) Mr. Cheek's statement in an August 19, 2004, letter to the Museum that the original lease had no renewal option clause and it was time to begin renewal negotiations with the tenant; 3) the original lease had expired before the Museum and the tenant began negotiating a new lease; 4) evidence that Mr. Cheek was not involved in negotiating the new lease; rather, the Museum met directly with the tenant and they negotiated the new lease themselves; 5) the terms of the new lease were substantially different from the original lease; and 6) the new lease did not reference any renewal or extension provisions of the original lease. The district court also expressed concern that the renewal provision of

the brokerage agreement was "entirely open-ended" and, theoretically, would entitle the broker to a commission every time the lease was renewed on into the future.

[¶ 23] We share the district court's concern. However, the parties to a contract are free to incorporate within their agreement whatever lawful terms they desire, and the courts are not at liberty, under the guise of judicial construction, to rewrite the contract. *City of Gillette v. Hladky Const., Inc.*, 2008 WY 134, ¶ 46, 196 P.3d 184, 200 (Wyo. 2008). Our function is to interpret contracts to effectuate the parties' intention, as expressed in the language of the agreement. *Id.* If the contract language is clear and unambiguous, our obligation on appeal is to determine the parties' intent from the words of the agreement as a matter of law. *Mathisen v. Thunder Basin Coal Co. LLC,* 2007 WY 161, ¶ 12, 169 P.3d 61, 65 (Wyo.2007).

[¶ 24] Here, the language in paragraph 8 of the brokerage agreement clearly and unambiguously provided for payment of a commission upon renewal of the lease. Likewise, the language of the First Amendment to Lease Agreement clearly and unambiguously modified and extended, or renewed, the original lease. There simply is no language suggesting that the First Amendment to Lease Agreement was intended to be an entirely new agreement.

[¶ 25] We reverse the district court's order granting summary judgment for the Museum and remand for entry of an order granting summary judgment for Mr. Cheek.