2010 WY 29

Scott and Connie HEIMER,
Appellants (Plaintiffs),

v.

ANTELOPE VALLEY IMPROVEMENT
and Service District, Appellee
(Defendant).

No. S–08–0169.

Supreme Court of Wyoming.

March 18, 2010.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

KITE, Justice.

[¶ 1] Scott and Connie Heimer claim a water main maintained by the Antelope Valley Improvement and Service District (the District) leaked for several years causing damage to their Campbell County residence. In 2004, the water main broke, allegedly causing additional damage to the Heimers' property. The Heimers filed a governmental claim against the District and subsequently brought suit in district court. The District moved for summary judgment, arguing that the Heimers' action was barred because they failed to file their governmental claim within the statutory time limit. The district court granted summary judgment in favor of the District, and the Heimers appealed. We conclude there are material issues of fact as to when the Heimers discovered or should have discovered the District's act, error or omission with respect to the water leak and as to whether the water main break was a separate incident. Consequently, we reverse and remand.

## ISSUES

[¶ 2] The Heimers present two issues:

1. Is there a genuine issue of material fact concerning whether Heimers' claims were timely under Wyo. Stat. Ann. § 1–39–113(a) when Heimers did not discover what was causing the subsidence to their property, despite diligent efforts to do so, until November 19, 2004?

2. Were the Heimers' claims for damages resulting from the total separation of the District's water main occurring on November 30, 2004, which was a separate incident of negligence, timely under Wyo. Stat. Ann. § 1–39–113(a)?

Although phrased more generally, the District states a similar issue.

## FACTS

[¶ 3] Because we are reviewing a summary judgment, we state the facts in the light most favorable to the non-movants, the

Representing Appellant: Tom C. Toner and Kendal R. Hoopes of Yonkee & Toner, LLP, Sheridan, Wyoming. Argument by Mr. Toner.

Representing Appellee: Rick L. Koehmstedt of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

Heimers. The Heimers bought their residence in 1999. In 2002, they began to notice cracks in the sheetrock and flooring of their home, but they did not know what was causing the damage. On February 7, 2002, the Heimers had the underground water and sewage pipes servicing their residence tested to see if fluid seepage from these lines was a possible cause of the problems. The results of the tests showed no leakage from those pipes.

[¶ 4] During 2002 and 2003, the residence continued to incur damage and it became apparent that the foundation was failing. In June 2004, the Heimers hired an engineering firm to determine the moisture contents of the soil on the lot. Testing of a single borehole revealed elevated moisture contents in the soil between five and fifteen feet below the surface. The final engineering report did not specify the source of the moisture in the soil or whether the elevated moisture levels were causing the subsidence problem.

[¶ 5] After receiving the engineering report, the Heimers began trying to determine the source of the excess moisture. They recognized one possible source was the District's water main that ran parallel to the street in front of their residence. In July 2004, the Heimers, through legal counsel, contacted the District by letter. They stated their home was experiencing severe subsidence problems and they were attempting to locate "a source, or sources, of water that may be contributing to their subsidence problem." The Heimers requested permission to test the water main for leaks because they had "been advised to confirm that water is not leaking from your water system."

[¶ 6] The District refused to allow the Heimers to test its water main, indicating that they had to rule out other possible causes of the subsidence before it would allow them to do so. Specifically, the District suggested the Heimers check for sources of surface water, elevated ground water levels, problems with their septic system, or settling of the home because it was constructed on fill dirt.

[¶ 7] Soon thereafter, the Heimers contacted the man who built their house and were informed that the residence was built on virgin land, not fill dirt. They were also informed no water or wet ground was discovered in any of the holes dug on the property during construction.

[¶ 8] On September 7, 2004, the Heimers sent another letter to the District. This letter informed the District that the original borehole testing revealed "a water source from the direction of [the District's] water system." It also related the information gleaned from the builder. The letter further stated that the Heimers' "septic system is downhill from the water source and, in fact, is suffering from the same inundation of water as the house." The Heimers asserted that they had diligently investigated their problem as objectively as possible and had come to the point where checking the District's water main for leaks was "a next logical step." In a letter dated September 28, 2004, the District again denied the Heimers' request to test the main, insisting the Heimers had not "taken sufficient steps to eliminate other causes" of the subsidence.

[¶ 9] The Heimers then hired Western Water Consultants (WWC) to conduct sampling and borehole analysis in five additional locations on the property. WWC outlined its test results in a report dated November 19, 2004. The report stated that elevated soil moisture contents had been found in the holes close to the water main and between the water main and the Heimers' residence.

[¶ 10] On November 22, 2004, the Heimers again contacted the District, requesting permission to check the water main for leaks. On November 30, 2004, before the issue was addressed, the water main separated under the road running in front of the Heimers' residence and 90,000 gallons of water were released over a ten hour period. The Heimers stated this break in the water main caused flooding around their home and damage to their driveway.

[¶ 11] Over the next couple of years, the condition of the Heimers' residence further deteriorated and, even after the water main break was repaired, the soils around their home remained saturated with water. Finally, on October 19, 2006, the Heimers delivered their governmental claim, dated October

18, 2006, to the District. In the notice of claim they stated that by the summer of 2004, they were "suspicious of the District's water main as [a] possible cause of their problem." Once they received the results of the testing by WWC in November 2004, they "had more than a strong suspicion that the cause of their home damage was a leak in the water main."

[¶ 12] The Heimers filed the instant action against the District on October 30, 2006, alleging negligence, inverse condemnation, and fraud and requesting a permanent injunction and damages. The District answered generally and then moved for partial summary judgment, asserting the Heimers' action was barred because they had not presented their governmental claim within two years of the District's alleged wrongdoing as required by Wyo. Stat. Ann. § 1–39–113(a) (LexisNexis 2009).

[¶ 13] In response, the Heimers argued their claim was timely because the limitation period did not begin to run until they received the WWC report in November 2004. Mr. Heimer submitted an affidavit in response to the District's summary judgment motion. He averred that, after receiving the WWC report, he became "fairly certain the cause of my damage was from the District's water main...." The district court determined the Heimers' letter to the District dated September 7, 2004, revealed they had discovered their claim against the District. Consequently, the district court ruled that the Heimers' October 18, 2006, governmental claim was untimely and granted the District's motion for partial summary judgment.[1] The Heimers appealed.

## STANDARD OF REVIEW

[¶ 14] Our standard of review for summary judgments states:

On appeal, this Court evaluates the propriety of a district court's summary judg-

ment ruling by examining the same materials and following the same standards as the district court. We examine the record de novo in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which may be fairly drawn from the record. If upon review of the record, doubt exists about the presence of genuine issues of material fact, we resolve that doubt against the party seeking summary judgment. We review questions of law de novo without giving any deference to the district court's determinations. If we can uphold summary judgment on any proper legal basis appearing in the record, we will.

*Wagner v. Reuter,* 2009 WY 75, ¶ 11, 208 P.3d 1317, 1321–22 (Wyo.2009) (internal citations omitted). *See also, Cheek v. Jackson Wax Museum, Inc.,* 2009 WY 151, ¶ 12, 220 P.3d 1288, 1290 (Wyo.2009).

## DISCUSSION

[¶ 15] The District is a governmental entity. Although governmental entities are traditionally immune from suit under the doctrine of sovereign immunity, the Wyoming legislature recognized "the inherently unfair and inequitable results which occur in the strict application of governmental immunity" and enacted the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101 through 1–39–121 (LexisNexis 2009). Section 1–39–102(a). Among the provisions included in the Wyoming Governmental Claims Act is the procedure to be followed in pursuing a claim against a governmental entity. Section 1–39–113. Strict adherence to this procedure is required. *Bell v. Schell,* 2004 WY 153, ¶ 10, 101 P.3d 465, 468 (Wyo.2004); *Beaulieu v. Florquist,* 2001 WY 33, ¶¶ 17–18, 20 P.3d 521, 527 (Wyo.2001); and Wyo. Const. Art. 16, § 7.

[¶ 16] Section 1–39–113(a) sets out the limitation period for bringing a governmental claim:

1. The motion for summary judgment was entitled "Motion for Partial Summary Judgment" and the Order followed suit. The Order did not contain a certification under W.R.C.P. 54(b) allowing immediate appeal of the Order. Under the circumstances, however, we do not believe this raises a jurisdictional problem. The only issue not expressly decided by the district court was the Heimers' claim for injunctive relief. As the district court noted in its decision letter, its ruling on the issues at hand was dispositive of all issues in the litigation. For all practical purposes, the order before us for review is final.

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(i) Not reasonably discoverable within a two (2) year period; or

(ii) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

### Water Main Leak

[¶ 17] Section 1–39–113(a) requires claimants to present their claim within two years of when they knew or should have known, with the exercise of due diligence, of the governmental entity's "alleged act, error or omission." The exact date of the beginning of the leak in this case, and accordingly, the date of the District's alleged act, error or omission is undetermined. The discovery rule contained in the statute is, therefore, squarely at issue.

[¶ 18] The application of the discovery rule to a statute of limitations involves a mixed question of law and fact; consequently, the entry of summary judgment on the issue of when a statute of limitations commences to run is typically inappropriate. *See, e.g., Cathcart v. Meyer*, 2004 WY 49, ¶ 30, 88 P.3d 1050, 1062–63 (Wyo. 2004); *Murphy v. Housel & Housel*, 955 P.2d 880, 883 (Wyo.1998). The question can only be resolved as a matter of law if uncontroverted facts establish when a reasonable person should have been placed on notice of his claim. *Hiltz v. Robert W. Horn, P.C.*, 910 P.2d 566, 569 (Wyo.1996).

[¶ 19] The District argued, and the district court agreed, that the Heimers discovered that the District's act, error or omission was the cause of the damage to their home at least by September 7, 2004, and their letter of that date demonstrated that discovery. We agree that one plausible interpretation of the evidence is that the Heimers' September 7, 2004, letter indicated that they had discovered the District's act, error or omission, thereby triggering the two year limitation period. However, our standard of review demands that we evaluate the evidence in the light most favorable to the non-moving party.

[¶ 20] Beginning in 2002, the Heimers knew that something was causing the soil underlying their home to subside. The Heimers provided evidence in response to the District's summary judgment motion indicating they were unable to determine the subsidence problem was most likely being caused by a continuous water leak in the District's water main until detailed borehole testing was completed by WWC on November 19, 2004. Prior to that, the Heimers had engaged in an on-going effort to determine the cause of the subsidence. They conducted tests on their own sewer and water lines which did not reveal any problems. During the summer of 2004, the Heimers had an engineering firm test the moisture in the soils surrounding their house, which showed elevated moisture levels in the soil, but did not specify whether this moisture level was causing the subsidence or the source of the moisture. The Heimers repeatedly asked for permission to conduct leak tests on the District's water main, but the District refused and insisted that they needed to rule out other causes of the subsidence. The Heimers followed the District's direction to look into other causes.

[¶ 21] Although the District argued in its motion for summary judgment that the Heimers had discovered the leak was the cause of the subsidence as of September 7, 2004, its September 28, 2004, letter declared that the Heimers had not yet ruled out other causes to establish that the District was responsible for their damage. The District's letter stated "the 'testing' which has been done by [Mr. Heimer] has **not eliminated other potential causes of his household problems**.... In any event, the District is not willing to allow your clients to test the water lines at this juncture absent information from [Mr. Heimer] that he has taken

sufficient steps to **eliminate other causes of his house problems.**" (Emphasis added.)

[¶ 22]   In response to the District's September 28th letter, the Heimers engaged WWC to do the detailed borehole testing. WWC drilled five more boreholes and the results provided to the Heimers on November 19, 2004, indicated that the excess water was coming from the direction of the District's main.   When all of the evidence is reviewed, there appear genuine issues of material fact as to whether the Heimers discovered, or should have discovered, the District's act, error or omission by September 7, 2004, and whether due diligence required the Heimers to discover the continuous water leak prior to November 19, 2004.   Those issues of material fact should be determined at trial.

[¶ 23]   The district court relied on *Rawlinson v. Cheyenne Board of Public Utilities,* 2001 WY 6, 17 P.3d 13 (Wyo.2001) in granting summary judgment in favor of the District.   Rawlinson filed a governmental claim and sued the Cheyenne Board of Public Utilities (BOPU) alleging property damage caused by a leaking fire hydrant.   This Court held that the governmental claim period began to run when the homeowner discovered the water was causing the damage to her property even though she claimed she had not yet discovered who was responsible.   *Id.,* ¶ 16, 17 P.3d at 17.   *Rawlinson* held that "[o]nce [the plaintiff] knows or should know the cause of that injury, he must investigate the situation and ascertain who might be legally culpable."   *Id.,* ¶ 15, 17 P.3d at 17, discussing *Redenz v. Rosenberg,* 360 Pa.Super. 430, 520 A.2d 883, 886 (1987) (emphasis omitted).   This is consistent with § 1–39–113(a) which requires the claimant to use due diligence to discover a governmental entity's "act, error or omission."

[¶ 24]   *Rawlinson* is readily distinguishable from the instant case.   It was undisputed that Rawlinson knew the water seepage had been causing damage to her property for several years and had considered the governmental entity as a possible cause of her damage for some time.   Although the *Rawlinson* opinion did not directly address the issue of whether the homeowner had acted with due diligence, it was apparent that the homeowner knew about the water seepage at the time she purchased the house, and had over three years to determine whether the BOPU was, in fact, the cause.   In contrast, no obvious water seepage existed in the instant case.   The evidence can be interpreted as indicating there were several potential causes of the subsidence, with excess water being one, and the Heimers did not know what was causing the subsidence until they received WWC's report.   In addition, the question of whether they acted with diligence to determine the cause of the subsidence and discover the District's act, error or omission is squarely raised.   In fact, the district court stated in its decision letter: "Over the course of time, plaintiffs undertook what appears to be a diligent investigation of various causes for the structure problems at their residence and it is safe to say that identifying the cause with certainty was not an easy matter."

[¶ 25]   This case is also distinguishable from *Rawlinson* because the District actually interfered with the Heimers' efforts to discover the cause of the subsidence.   In *Rawlinson,* the BOPU was cooperative when the homeowner complained and even conducted tests on its water system to check for leaks.   *Rawlinson,* ¶ 16, 17 P.3d at 17.   The BOPU's actions and the length of time the homeowner was aware of the water seepage distinguish that case from the issue presented here.

[¶ 26]   Although the Heimers knew that water was a potential cause of the subsidence before November 19, 2004, one plausible interpretation of the evidence is that they reasonably did not discover the District's act, error or omission until they received WWC's report.   Under these circumstances, material issues of fact exist as to when the Heimers knew or should have known that the District's act, error or omission caused their damages and whether they acted with due diligence to discover the cause.

### Water Main Break

[¶ 27]   The district court did not separately address the water main break in its summary judgment decision letter, apparently believing the break was related to the

long term water leak and thereby governed by the same limitation period. The Heimers argue the break in the water main on November 30, 2004, was a separate incident, involving a separate limitation period.

[¶ 28] The issue of what constitutes a new event for purposes of a governmental claim was addressed in *Waid v. State of Wyoming, Dep't of Transportation,* 996 P.2d 18 (Wyo. 2000). In that case, the Department of Transportation installed culverts of insufficient capacity to carry excess rain water. The plaintiffs filed a governmental claim in 1995 alleging that their property had been damaged by floods in 1987 and 1993 as a result of the deficiency in the culverts. The Department of Transportation argued the plaintiffs' claims were barred under the Wyoming Governmental Claim Act. The plaintiffs conceded that their claim for damage associated with the 1987 flood was time barred, but maintained that the second flood triggered a new limitation period. Relying on the plain language of § 1–39–113, this Court ruled that the plaintiffs' claim accrued as of the date of the first flood in 1987. "The situation had not changed by 1993, and although that flood caused additional damage, there was no new 'act, error or omission,' or a fresh discovery of such that would cause the statutory time period to start anew." *Waid,* 996 P.2d at 25.

[¶ 29] Although the circumstances presented in the instant case are different, the reasoning in *Waid* is instructive and informs our decision here. The alleged error made by the governmental entity in *Waid* was the improper design of the culvert. That error was discoverable after the first flood and, consequently, the limitation period began at that time. The fact that the plaintiffs suffered additional damages as the result of a second flood did not change the time when the governmental entity's act, error or omission was discoverable. In the instant case, the question is whether the same act, error or omission caused both a water main leak and the water main break or whether there were two different acts, errors or omissions resulting in two separate claims and two distinct limitation periods.

[¶ 30] The evidence presented in the summary judgment submissions indicated that the water main separated at a joint, which showed no signs of "'wear markers' which would support[ ] a claim of long term leaking problems." That evidence implies that the joint that separated was not the source of a long-term leak. An engineering report indicated that the separation was caused by differential movement in the supporting soil, creating a factual question about the cause of such movement. The answer to that question could raise other factual questions as to whether the separation was caused by an act, error or omission by the District and whether it was related to the alleged water main leak. The facts need to be further developed before the beginning of the limitation period for the water main break can be established. Therefore, summary judgment was inappropriate on this issue.

[¶ 31] On remand, the fact finder will need to determine whether the water main break involved the same act, error or omission as the alleged long term water leak. If so, then the fact finder's determination on the discovery issue discussed above will determine the start of the limitation period for the water main break. However, if the fact finder determines that the water main break was not related to a long term leak, then the date of the break, November 30, 2004, would mark the beginning of a new limitation period and the Heimers' filing of their governmental claim on October 19, 2006 was timely.

## CONCLUSION

[¶ 32] Genuine issues of material fact exist as to when the statute of limitation began running on the Heimers' water leak claim. The fact finder must determine when the Heimers discovered or should have discovered the District's "act, error or omission" for purposes of starting the limitation period. Moreover, there are genuine issues of material fact surrounding the commencement of the limitation period on the Heimers' claim for damages associated with the water line break.

[¶ 33] Reversed and remanded for further proceedings consistent with this opinion.